UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RHIANNON W.,[1]

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

DECISION & ORDER

21-CV-6333MWP

**PRELIMINARY STATEMENT**

        Plaintiff Rhiannon W. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 17-23).[2] Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 17, 2018, the application date. (Tr. 17). At step two, the ALJ concluded that plaintiff had the following severe impairments: diabetes mellitus, type 1; diabetic retinopathy; bilateral cataracts; status post surgery for left detached retina; diabetic neuropathy; migraine headaches; hypertension; major depressive disorder; and generalized anxiety disorder. (*Id.*). With respect to plaintiff's mental limitations, the ALJ found that she suffered from moderate limitations in interacting with others, and mild limitations in understanding, remembering, and applying information; concentrating, persisting, and maintaining pace; and adapting and managing herself. (Tr. 18). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 17-19).

The ALJ concluded that plaintiff had the RFC to perform light work with certain limitations. (Tr. 19-22). Specifically, the ALJ found that plaintiff could occasionally lift and/or carry, and push and/or pull, 20 pounds, and frequently lift and/or carry 10 pounds. (Tr. 19). She

---

[2] The administrative transcript (Docket # 8) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

could sit, stand, and/or walk about six hours in an eight-hour day. (*Id.*). She could frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (*Id.*). She also could never work at unprotected heights or near moving machinery. (*Id.*). She could occasionally perform tasks requiring near visual acuity (i.e., 20 inches or closer), far visual acuity (i.e., 20 feet or more), depth perception, and/or close hand-eye coordination. (*Id.*). She could understand, remember and carry out simple instructions and tasks, frequently interact with coworkers and supervisors, occasionally have contact with the general public, and she could maintain concentration and focus for up to 2 hours at a time. (*Id.*). At steps four and five, the ALJ determined that plaintiff had no past relevant work but that positions existed in the national economy that plaintiff could perform, including hand washer, cafeteria attendant, and housekeeper. (Tr. 22-23). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 23).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error. (Docket # 9). First, plaintiff contends that the ALJ erred in evaluating the opinion of consultative examiner Harbinder Toor, M.D., by failing to discuss the supportability and consistency factors and by failing to articulate whether he found Dr. Toor's opinion persuasive. (Docket # 9-1 at 1, 7-12). Next, plaintiff maintains that the ALJ failed to properly evaluate the opinion of plaintiff's treating physician, Joseph DePra, M.D., by misattributing his opinion to a "social services employee" and rejecting it based upon an apparent misunderstanding of the severity of plaintiff's vision impairment. (*Id.* at 1, 12-14).

IV.     **Analysis**

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

As both parties recognize, the Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.[3] *See generally* 20 C.F.R. §§ 404.1520c, 416.920c. Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [a claimant's] medical sources." *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of

---

[3] Plaintiff filed her claim for SSI on January 15, 2019. (*See* Tr. 168).

medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021). "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'" *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14. As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2). "Where a medical source provides multiple

medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a 'single analysis.'" *Cory W. v. Comm'r of Soc. Sec.*, 2021 WL 5109663, *4 (W.D.N.Y. 2021) (quoting 20 C.F.R. § 416.920c(b)(1)).

As noted above, plaintiff challenges the ALJ's determination, maintaining that he improperly attributed an opinion authored by plaintiff's primary care provider, Joseph DePra, M.D., to a "social services employee." (Docket # 9-1 at 1, 12-14). The Commissioner concedes that the ALJ failed to attribute the opinion to Dr. DePra but maintains that the "typographical error" did not affect the decision and was therefore harmless. (Docket # 10-1 at 11 n.11, 17-19). For the reasons discussed below, I am unable to conclude that the ALJ's mistake was harmless.

On March 20, 2019, plaintiff's then-primary care physician, Joseph DePra, M.D., completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form sent to him by Jessica Bianchi, apparently for submission to the Livingston County Department of Social Services.[4] (Tr. 850-52). At the time the opinion was authored, Dr. DePra had been plaintiff's primary care physician for the previous three years. (Tr. 939-1043). Dr. DePra opined that plaintiff was very limited in her ability to lift, carry, push, pull, bend, see, hear, and speak, moderately limited in her ability to walk, stand, use her hands, and climb stairs, and had no limitations in her ability to sit. (*Id.*). Dr. DePra noted that plaintiff was scheduled for surgery for a detached retina and was totally disabled due to permanent vision loss. (*Id.*).

In his decision, the ALJ suggested that this "state level disability evaluation" was completed by "Dr. Jessica Bianchi." (Tr. 21). After summarizing the opinion, the ALJ

---

[4] The record contains an additional opinion completed by Dr. DePra on May 31, 2018, prior to the alleged onset date. (Tr. 1179-81). The ALJ did not discuss this opinion in his decision, and neither party mentions the opinion in their submissions.

8

determined that the opinion that plaintiff was totally disabled due to vision loss was not supported by the function-by-function limitations assessed in the form. (Tr. 21-22). He also observed that plaintiff's detached retina had been surgically repaired and "the temporary nature of her detachment [did] not support permanent disability." (*Id.*). Finally, the ALJ concluded that the objective treatment notes contained in the record "support[ed] a light range of simple work, which [was] inconsistent with the opinion." (*Id.*). According to the ALJ, the opinion was "only somewhat persuasive" insofar as the moderate limitations assessed therein were consistent with the record. (*Id.*). The ALJ determined that plaintiff retained the physical RFC to perform a range of light work. (Tr. 19). In reaching this conclusion, the ALJ reasoned that the record lacked any "treating source opinions that support the level of limitations [plaintiff] alleged." (Tr. 22).

Having reviewed the record and the ALJ's determination, I am unable to conclude that the ALJ's failure to appreciate that the opinion was authored by Dr. DePra constituted harmless error. As an initial matter, although under the new regulations an ALJ is no longer required to attribute any greater weight to opinions from treating sources, an ALJ nevertheless is required to consider the nature of the treating relationship when evaluating the persuasiveness of the opinions of record. *See* 20 C.F.R. § 416.920c(c). While the regulations do not require the ALJ to explicitly discuss the treating relationship, here the ALJ's decision suggests that he may not have understood or considered the treating relationship between Dr. DePra and plaintiff at all when evaluating the opinion.

Of course, the salient question in this case is not whether the ALJ erred but whether that error was harmless. The Commissioner's harmlessness argument focuses solely on Dr. DePra's opinion concerning the debilitating effects of plaintiff's vision loss (Docket # 10-1

at 17-19) and ignores Dr. DePra's opinion that plaintiff suffered from significant limitations in her ability to lift, carry, push, pull, and bend (Tr. 852). These limitations were rejected by the ALJ, who determined that only the moderate limitations assessed by Dr. DePra were consistent with the record. (Tr. 22).

Moreover, although I agree with the Commissioner that typographical errors – even ones misattributing the opinion of a treating source provider – may, under certain circumstances, be harmless, *see Ortiz v. Colvin*, 298 F. Supp. 3d 581, 591 (W.D.N.Y. 2018) (affirming ALJ decision where ALJ misattributed opinion of nurse practitioner to plaintiff's treating physician; "it is evident that the substance of [the nurse practitioner's] physical RFC opinion aligns with the ALJ's discussion of the opinion he attributed to [the treating physician], to which he afforded 'little weight'[;] . . . [t]his suggests that the ALJ's evaluation of that opinion would not have changed had he credited the opinion [to the nurse practitioner]") (collecting cases), in this case, the ALJ's articulated rationale included a statement that the record lacked a treating source opinion supporting plaintiff's claimed limitations. Of course, the record did contain a treating source opinion supporting some of plaintiff's alleged limitations. That the ALJ stated to the contrary undermines any confidence that the ALJ's misidentification of the author of the opinion was a harmless typographical error. Under these circumstances, remand is required. *See Karen D. R. v. Kijakazi*, 2023 WL 5009251, *8-9 (E.D. Va.) (remanding where ALJ misattributed opinion of one treating provider to another treating provider and determining that the mistake could have affected the ALJ's evaluation of the consistency of the opinions with the record; "[i]t may be that on remand the ALJ will make a similar assessment of [the treating provider's] opinion[,] . . . [b]ut the court cannot supply that assessment in the first instance, and therefore remand is required"), *report and recommendation adopted by*, 2023 WL 5004034 (E.D.

Va. 2023); *Lisa W. v. Kijakazi*, 2022 WL 843600, *6 (S.D. Ind. 2022) (remanding under previous regulations; "[t]he first and most glaring issue is that the ALJ incorrectly attributed a report from [plaintiff's] treating neurologist . . . to a vocational rehabilitation worker to whom the report was addressed[;] . . . [t]his mistake of fact undermines the ALJ's subsequent analysis of the report, which the ALJ discounted because [the vocational rehabilitation worker] did not personally examine [plaintiff]"); *Heggood v. Comm'r of Soc. Sec.*, 2021 WL 959264, *5 (W.D. Mich. 2021) (remanding where ALJ misattributed opinion to a physician's assistant instead of the treating physician); *Maria J. v. Comm'r of Soc. Sec.*, 2020 WL 7296751, *5 (W.D.N.Y. 2020) (remanding under previous regulations where ALJ misattributed the statement of plaintiff's treating osteopathic physician to plaintiff's treating neurologist; "it is impossible for this [c]ourt to determine whether the ALJ would have weighed the opinion evidence in the same manner if she had appreciated that [plaintiff's treating osteopathic physician] – not [plaintiff's treating neurologist] – authored the . . . light duty note[;] [n]or can I discern whether the ALJ would have reached the same RFC determination had she not made this misidentification").

Additionally, the ALJ's RFC fails to incorporate or account for all the moderate limitations assessed by Dr. DePra – even though the ALJ purported to credit them – specifically, Dr. DePra's finding that plaintiff had moderate limitations in using her hands. (Tr. 852). In his decision, the ALJ determined that the moderate limitations assessed by Dr. DePra were consistent with the record. (Tr. 22). Those limitations included Dr. DePra's noted assessment that plaintiff had moderate limitations in using her hands. (Tr. 21, 852). Despite that, the ALJ's decision fails to include any discussion of this finding or explanation as to how the RFC incorporates or accounts for this functional limitation.

"[T]o enable [a reviewing court] to decide whether the determination is supported by substantial evidence," *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984), an ALJ must sufficiently "explain the link between his RFC assessment and the record evidence," *Paul v. Colvin*, 2016 WL 6275231, *2 (W.D.N.Y. 2016). Although an ALJ need not resolve every evidentiary conflict in the record, he or she must explain discrepancies between the RFC finding and medical source opinions. *See Samuel N. v. Comm'r of Soc. Sec.*, 2023 WL 3962821, *3 (W.D.N.Y. 2023) ("while the RFC determination need not correspond perfectly with any single medical opinion, an ALJ still must explain why a medical opinion was not adopted if the RFC assessment conflicts with it") (internal quotations omitted). "Remand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Plaintiff reported to Dr. Toor that she had difficulty grasping and holding and that her diabetic neuropathy caused tingling and numbness in her hands. (Tr. 549). She also testified that when her fingers got numb, she could not "feel to touch things," which made it difficult for her to "know exactly what's going on." (Tr. 38). "Notwithstanding consultative examiner [Dr. Toor's] note that [plaintiff had grip strength 5/5 bilaterally and intact hand and finger dexterity (Tr. 551)], the ALJ's failure to explicitly address [p]laintiff's capacity to use her hands and fingers is significant." *Welch v. Comm'r of Soc. Sec.*, 2019 WL 4279269, *2 (E.D.N.Y. 2019).

Based on the vocational expert's testimony, the ALJ found that plaintiff could perform the requirements of the positions of hand washer, cafeteria attendant, and housekeeper. Those jobs, however, require frequent handling and occasional fingering. *See* DICOT 361.687-030, 1991 WL 672995 (1991) (washer, hand); DICOT 311.677-010, 1991 WL 672694 (1991) (cafeteria attendant); DICOT 323.687-014, 1991 WL 672783 (1991) (cleaner,

housekeeping). Without providing further explanation, the ALJ failed to connect his assessment of Dr. DePra's findings, the RFC, and the conclusion that plaintiff could perform the requirements of the above positions. *See James B. v. Saul*, 2021 WL 615855, *5-6 (W.D.N.Y. 2021) ("courts in this district have found mild to moderate hand limitations to be inconsistent with the ability to frequently reach, handle, and finger[;] . . . [m]ore significantly, the point is not whether the courts have found certain activities consistent with certain medical findings; the point is that the ALJ did not connect the dots between [the consultative physician's] opinion and the RFC[;] . . . [additionally,] although the ALJ gives 'some weight' to [the treating physician's] opinion, the ALJ does not discuss . . . [his] opinion that [p]laintiff had significant limitations with . . . handling . . . attributed to numbness in his fingers caused by [p]laintiff's diabetic neuropathy") (quotations omitted); *Carlin v. Comm'r of Soc. Sec.*, 2020 WL 5995181, *2 (W.D.N.Y. 2020) (finding that the court was unable "to assess the validity of the agency's ultimate findings and afford [plaintiff] meaningful judicial review" where the ALJ failed to explain how plaintiff could perform work involving "frequent handling and fingering despite having mild to moderate difficulties … using the hands") (internal quotations omitted). Accordingly, on remand, the ALJ should make specific findings concerning plaintiff's ability to use her hands and incorporate hand limitations, if any, into the RFC.

Having concluded that remand is required, I need not address any other specific challenges to or perceived deficiencies in the ALJ's decision. For the benefit of proceedings on remand, however, I note that the ALJ should evaluate the persuasiveness of all medical opinions based on supportability, consistency, relationship with the claimant, specialization, and other relevant factors, and carefully summarize the record. Additionally, in light of plaintiff's diabetic retinopathy and neuropathy and the evidence that her sugar levels remain uncontrolled with

regular treatment, the ALJ should carefully consider his statements that plaintiff's "routine treatment . . . controls [her] symptoms" and that she has "maintained well with regular treatment."  (*See* Tr. 20, 22).  Finally, the ALJ should consider explaining further the evidence supporting his observation that claimant shows "the ability to perform a wide range of activities independently" (Tr. 22) in view of the cited records noting that, although plaintiff can shower and dress herself daily, she "spends most days getting up" and needs help cooking, cleaning, doing the laundry, and shopping (Tr. 545, 550).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                                  MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
       September 19, 2023